COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

WILLIAM COPELAND,                                      )

                                                                              )              
No.  08-02-00505-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )     Criminal District Court at Law #1

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20010C14751)

                                                                              )

 

 

O
P I N I O N

 

This is an appeal
from a jury conviction for the offense of intentional or knowing unauthorized
discharge.  The court assessed punishment
at eighteen months community supervision and a twenty-five thousand dollar fine
of which twenty thousand dollars was probated. 
We reverse the judgment of the trial court.

I.  SUMMARY
OF THE EVIDENCE








At trial, Celso
Rangel testified that he lived at a trailer court located at 215-217 McArthur
Street in Canutillo, El Paso County, Texas. 
On August 5, 2001, he used a video camera from inside his trailer home
and taped Appellant and the owner of the trailer court, Winfried
Heiringhoff.  The tape was played to the
jury.  It showed Heiringhoff outside
setting up a pump.  At the beginning of
the tape, Appellant approached and pushed aside a tool on the ground.  He then took a tool and left.  Heiringhoff began pumping out sewage from the
trailer park=s
cesspool.  He had to readjust the pipes
several times.  The sewage smelled of
fecal matter.  Somewhat over thirty
minutes later, Heiringhoff disassembled the pipes.  Appellant appeared and he helped carry off
the pump to an unknown location.  The
sewage ran back under Rangel=s
trailer.  The sewage also pooled nearby
on the other side of the property fence. 
The sewage under the trailer remained for approximately a day or a day
and a half.  The other pool was present
for approximately three days.

Ruben Gallegos
testified that he worked for his father at Henry Cesspools and Service and
Construction, Inc.  On November 1, 2000,
he serviced the cesspool at the site and pumped out 6,000 gallons of
sewage.  He stated that there were too
many trailers tied into the cesspool and it was failing.  He stated that there were health hazards
regarding the contents of the cesspools. 
He was not called upon to empty the cesspool again.

Rosalie Dominguez
stated that she was a health inspector with the El Paso City-County Health
Department.  She inspected sewage
facilities.  In August of 2001, she
investigated a complaint regarding the sewage facilities at Heiringnoff=s trailer park.  After viewing the tape Rangel had made, she
took one water sample from a well uphill from the cesspool and one sample near
the cesspool.  She testified that she had
seen Appellant and Heiringnoff together on the property on other
occasions.  The witness testified that
Appellant had been Heiringhoff=s
attorney with regard to a prior complaint filed against him regarding a permit
for the cesspool.  








Teresa Owens
testified that she worked as a microbiologist with the El Paso City-County
Health Environmental District.  She
tested the two samples taken by Dominguez. 
The sample from the area near the cesspool tested positive for e. coli
bacteria which is coliform fecal bacteria. 
The sample from the well tested negative for coliforms.  

Dr. Jorge Magana
stated that he was the director of the El Paso City-County Health Environmental
District.  He indicated that water
contaminated with e. coli or coliform has varying effects on individuals health
depending upon their age and the health of their immune system.  Symptoms include nausea, vomiting, diarrhea,
and such a contamination can result in death for individuals with weak immune
systems.  Water which contains e. coli or
coliform bacteria would be contaminated and the water would be considered as a
pollutant.  

A criminal
investigator for the Texas Commission on Environmental Quality, Richard
Talamantes, testified that he went to the trailer park in order to mark the
location using ground positioning satellite coordinates to show the elevation,
location, and flow at that location.  He
used a GPS device to mark four corners of the property and he then walked in a
straight line toward the Rio Grande River. 
Using a computer program, he obtained an estimate of the distance from
the trailer park to the nearest bank of the river.  The distance was 1,428 feet.  

Russell Smith
testified regarding the permeability of the soil and the depth of the
groundwater at the point of the discharge of the sewage.  Smith was a professional geologist and owned
his own consulting company.  He had a
bachelor=s and a
master=s degree
in geology and he had done research regarding groundwater.  He was obtaining a Ph. D from the University
of Texas at El Paso in environmental science and engineering.  He was a member of various geological
societies and he had been a Certified Hazardous Materials Manager.  He had been continuously involved in the
field of underground water and geology for eleven years.  His research and testimony could not have
been produced by the average layperson and his testimony would aid the trier of
fact to understand his research and testimony.








Smith stated that
he measured the depth of the groundwater in this case utilizing a long accepted
scientific technique in the scientific community.  He had worked on hundreds of cases where he
monitored or measured wells for contaminated groundwater in areas near
Heiringhoff=s
property.  He testified that the
groundwater would be typically at thirty feet below the ground surface where
the sewage discharge had occurred.  He
stated that the permeability of the soil at that location was six inches per
hour to twenty inches per hour or an average of one foot an hour.  He based his testimony upon The Soil Resources of El Paso Report
done by Texas A& M University.

The witness
testified that it was almost certain that some of the discharged sewage water
reached the groundwater level.  He also
stated that the sewage water would eventually work its way to the river.  He stated that the discharge that occurred on
August 5 threatened to cause water pollution to the underground water and the
river.  

Appellant=s sole witness was Frank Gaudet, an
environmental engineer from Dallas, Texas. 
He designed and installed septic tank systems and other sanitation
systems.  He testified that the state
regulations with regard to the leaching distance for sewage requires two feet
of soil between the point of discharge and the underground water.  The bacteria in the sewage would be killed
off in the first two to four feet of soil. 
Gadet testified that it had to be the case for those figures because
otherwise there would be massive contamination in the area and there was no
such contamination.

II.  DISCUSSION








In Issue No. Two,
Appellant contends that the evidence was legally insufficient to show that
Appellant acted as a party in discharging or allowing to discharge.  In reviewing the legal sufficiency of the
evidence, we are constrained to view the evidence in the light most favorable
to the judgment to determine whether any rational trier of fact could find the
essential elements of the offense, as alleged in the application paragraph of
the charge to the jury, beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d 234, 239
(Tex.Crim.App. 1989); Humason v. State, 728 S.W.2d 363, 366
(Tex.Crim.App. 1987).  More particularly,
sufficiency of the evidence should be measured by the elements of the offense
as defined by the hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 239-40
(Tex.Crim.App. 1997).








Our role is not to
ascertain whether the evidence establishes guilt beyond a reasonable
doubt.  Stoker v. State, 788
S.W.2d 1, 6 (Tex.Crim.App. 1989), cert. denied, 498 U.S. 951, 111 S.Ct.
371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702
(Tex.App.‑‑El Paso 1992, pet. ref=d).  We do not resolve any conflict in fact, weigh
any evidence, or evaluate the credibility of any witnesses, and thus, the fact‑finding
results of a criminal jury trial are given great deference.  Menchaca v. State, 901 S.W.2d 640,
650-52 (Tex.App.‑-El Paso 1995, pet. ref=d);
Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v.
State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); Leyva v. State, 840
S.W.2d 757, 759 (Tex.App.‑‑El Paso 1992, pet. ref=d); Bennett v. State, 831 S.W.2d
20, 22 (Tex.App.‑‑El Paso 1992, no pet.).  Instead, our only duty is to determine if
both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the
verdict.  Adelman, 828 S.W.2d at
421‑22.  In so doing, we resolve
any inconsistencies in the evidence in favor of the verdict.  Matson, 819 S.W.2d at 843, quoting
Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).  The trier of fact, not the appellate court,
is free to accept or reject all or any portion of any witness's testimony.  Belton v. State, 900 S.W.2d 886, 897
(Tex.App.--El Paso 1995, pet. ref=d).

Section 7.145 of
the Texas Water Code, Intentional or Knowing Unauthorized Discharge, reads in
pertinent part:

(a)        A person commits an offense if the
person, acting intentionally or knowingly with respect to the person=s conduct, discharges or allows the
discharge of a waste or pollutant:

 

(1)        into or adjacent to water in the state
that causes or threatens to cause water pollution unless the waste or pollutant
is discharged in strict compliance with all required permits or with an order
issued or a rule adopted by the appropriate regulatory agency; or . . . . 

 

Tex. Water Code Ann.
' 7.145 (Vernon Supp. 2004-05).

 

The application paragraph of the
charge to the jury stated, in relevant part:

 

Therefore, if you
believe from the evidence beyond a reasonable doubt, that the defendant,
WILLIAM COPELAND, acting alone or as a party, on or about August 5, 2001, did
then and there in El Paso County, Texas unlawfully, intentionally, or knowingly
with respect to his conduct, discharge, or allow the discharge, of a waste or
pollutant, namely sewage into or adjacent to water in the State, namely,
underground water located near 215-217 McArthur, Canutillo, El Paso
County, State of Texas or Rio Grande, which caused or threatened to cause water
pollution, said discharge was not discharged in strict compliance with all
required permits or with any order issued or rule adopted by the appropriate
regulatory agency, then you will find the defendant guilty under verdict form >A.=

 

The jury was instructed that:

 

>To discharge=
includes to deposit, conduct, drain, emit, throw, run, allow to seep, or otherwise
release or dispose of, or to allow, permit, or suffer any of these acts or
admissions.

 








>Water=
or >water in the state= means groundwater, percolating, or
otherwise, lakes, bays, ponds, impounding reservoirs, springs, rivers, streams,
creeks, estuaries, wetlands, inlets, canals, the Gulf of Mexico, inside the
territorial limits of the state, and all other bodies of surface water, natural
or artificial, inland or coastal, fresh or alt, navigable or nonnavigable, and
including the beds and banks of all watercourses and bodies of surface water,
that are wholly or partially inside or bordering the state or inside the
jurisdiction of the state.

 

>Pollution=
means the alternation of the physical, thermal, chemical, or biological quality
of, or the contamination of, any of the water in the state that renders the
water harmful, detrimental, or injurious to humans, animal life, vegetation, or
property or to public health, safety, or welfare, or impairs the usefulness or
public enjoyment of the water for any lawful or reasonable purpose.

 

>Waste=
means sewage, industrial waste, municipal waste, recreational waste,
agricultural waste, or other waste as defined in the Texas Water Code.

 

>Sewage=
means waterborne human waste and waste from domestic activities, such as
washing, bathing, and food preparation.

 

>Pollutant=
means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage
sludge, filter backwash, munitions, chemical wastes, biological materials,
radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar
dirt, and industrial, municipal, and agricultural waste discharged into any
water in the state.  The term >pollutant=
does not include tail water or runoff water from irrigation or rainwater runoff
from cultivated or uncultivated rangeland, pastureland, and farmland.[1]

 

Regarding the law of parties, the
jury was instructed:

 

All persons are
parties to an offense who are guilty of acting together in the commission of an
offense.  A person is criminally
responsible as a party to an offense if the offense is committed by his own
conduct, by the conduct of another for which he is criminally responsible, or
by both.

A person is criminally
responsible for an offense by the conduct of another if, acting with the intent
to promote or assist the commission of the offense, he solicits, encourages,
directs, aids or attempts to aid the other person to commit the offense.  Mere presence alone will not constitute one a
party to an offense.[2]

 








Appellant contends that the
evidence shows that Heiringhoff acted alone in the commission of the offense
and Appellant=s sole
involvement in assisting in carrying off the pump occurred after the commission
of the offense.  The State counters that
Appellant had a duty to prevent the commission of the offense and Appellant=s actions after the commission offense
can be taken into consideration.[3]  Mere presence or even knowledge of an offense
does not make one a party to the offense. 
Oaks v. State, 642 S.W.2d 174, 177 (Tex.Crim.App. 1982); Acy
v. State, 618 S.W.2d 362, 365 (Tex.Crim.App. 1981); see Monroe v. State,
47 Tex.Crim. 59, 81 S.W. 726, 727 (1904)(holding mere fact defendant who was
present but did not participate or aid in homicide, concealed the offense for a
time or failed to report the killing, did not make him guilty of any
offense).  The evidence must show that at
the time of the offense, the parties were acting together, each contributing
some part toward the execution of the common purpose. Burdine v. State,
719 S.W.2d 309, 315 (Tex.Crim.App. 1986). 
In determining whether a defendant participated in an offense as a
party, the court may examine the events occurring before, during, and after the
commission of the offense, and may rely on the actions of the defendant which
show an understanding and common design to commit the offense.  Beier v. State, 687 S.W.2d 2, 4
(Tex.Crim.App. 1985). 








While mere
presence is a circumstance that can tend to prove that a person is a party to
the offense, and when taken with other facts, may be sufficient to show that he
was a participant.  See Wygal v. State,
555 S.W.2d 465, 469 (Tex.Crim.App. 1977), in the present case, we find there is
insufficient evidence to support the Appellant=s
conviction as a party to the offense. 
While there might have been knowledge of what Heiringhoff was about, and
Appellant was present during the offense, his actions in taking away a tool
does not serve to demonstrate a contribution towards a common purpose.  Appellant helped carry away the pump after
the pipes had been disassembled and it is purely speculative where the pump was
taken or for what purpose.  Accordingly,
we find that the evidence was legally insufficient to demonstrate Appellant=s guilt as a party to the offense.  Issue No. Two is granted.  Given the prior discussion, it is unnecessary
to respond to Appellant=s
remaining issues.

Having sustained
Appellant=s Issue
No. Two, and further finding that it is unnecessary to respond to Appellant=s remaining issues, we reverse the
judgment of the trial court and render a judgment of acquittal.

 

 

November 4, 2004

RICHARD BARAJAS, Chief Justice

 

Before Panel No. 3

Barajas, C.J., Larsen and Chew, JJ.

 

(Do Not Publish)

 











[1]  These
definitions are found in Tex. Water Code
Ann. 26.001, '' (20)(5)(14)(6)(7)(13)(Vernon Supp. 2004-05).





[2]  See Tex. Penal Code Ann. ' 7.01(a) & (b) and '
7.02(a)(2)(Vernon 2003).





[3]  While Tex. Penal Code Ann. ' 7.02(a)(3)(Vernon 2003) provides that one having a
legal duty to prevent commission of an offense and who acts with intent to promote
or assist its commission, and who fails to make a reasonable effort to prevent
commission of the offense, can be guilty as a party.  The State has not briefed this contention and
this theory was not submitted to the jury.